David H. Stern (SBN 196408)
Alex E. Spjute (SBN 229796)
Jennifer D. Ghassemi (SBN 312110)
Matthew J. Goodman (SBN 316286)
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone:  310.820.8800
Facsimile:  310.820.8859
Emails*:    dstern@bakerlaw.com
            aspjute@bakerlaw.com
            jghassemi@bakerlaw.com
            mgoodman@bakerlaw.com*

*Attorneys for Defendants,*
BIO-MEDICAL APPLICATIONS OF
CALIFORNIA, INC. (wrongly named twice as
USA Bio-Med Appl of California, Inc.) AND
FRESENIUS MEDICAL CARE PRACTICE
HOLDINGS, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENCE WHITTAKER, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BIO-MEDICAL APPLICATIONS OF CALIFORNIA, INC., a Delaware corporation; FRESENIUS MEDICAL CARE PRACTICE HOLDINGS, INC., a Delaware corporation; USA BIO-MED APPL OF CALIFORNIA, INC., an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:  2:26-cv-00431<br><br>*[Los Angeles County Superior Court Case No. 25STCV34311]*<br><br>**DEFENDANTS BIO-MEDICAL APPLICATIONS OF CALIFORNIA, INC.'S AND FRESENIUS MEDICAL CARE PRACTICE HOLDINGS, INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>*[Filed concurrently with Declaration of Melissa Jacobs; Civil Cover Sheet; and Notice of Interested Parties]*<br><br>Action Filed:    November 21, 2025<br>Removal Filed:   January 15, 2026 |

DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendants BIO-MEDICAL APPLICATIONS OF CALIFORNIA, INC. ("BMA of California") and FRESENIUS MEDICAL CARE PRACTICE HOLDINGS, INC. ("FMCPH", and collectively, "Defendants") hereby remove the action filed by Plaintiff FLORENCE WHITTAKER ("Plaintiff") in the Superior Court of the State of California for the County of Los Angeles, captioned *Whittaker v. Bio-Medical Applications of California, Inc., et al.,* Case No. 25STCV34311, to the United States District Court for the Central District of California. [1]

## I.

## **BACKGROUND**

1. This is a wage and hour case. On November 21, 2025, Plaintiff filed a putative class and representative action complaint against Defendants in the Superior Court of the State of California for the County of Los Angeles, captioned *Florence Whittaker v. Bio-Medical Applications of California, Inc., et al.,* Case No. 25STCV34311 (the "Complaint"). Defendants were served with the Complaint on December 16, 2025. True and correct copies of the Summons and Complaint served upon Defendants and the accompanying Proofs of Service are attached hereto as **Exhibit 1, Exhibit 2**, and **Exhibit 3**, respectively.

2. The Complaint asserts 10 causes of action, which are brought as class claims, for alleged violations of California wage and hour laws, namely: (1) violation of California Labor Code §§ 510 and 1198 for unpaid overtime; (2) violation of California Labor Code §§ 226.7 and 512(a) for unpaid meal period premiums; (3) violation of California Labor Code § 226.7 for unpaid rest period premiums; (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 for unpaid minimum wages; (5) violation of California Labor Code §§ 201-202 for final wages not timely

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[1] Plaintiff appears to have named BMA of California twice as a defendant, by wrongly naming it also as the non-existent entity named "USA Bio-Med Appl of California, Inc."

paid; (6) violation California Labor Code § 204 for wages not timely paid during employment; (7) violation of California Labor Code § 226 for non-compliant wage statements; (8) violation of California Labor Code § 1174(d) for failure to keep requisite payroll records; (9) violation of California Labor Code § 2800 and 2802 for unreimbursed business expenses; and (10) violation of California Business & Professions Code § 17200, *et seq.*, for unfair business practices. (*See generally* Compl.)

3.     By her Complaint, Plaintiff, on behalf of the putative class, asserts that she and the class are entitled to, among other things, an award of compensatory damages, premium wages, liquidated damages, penalties, restitution to the class, prejudgment interest on any unpaid compensation, attorneys' fees and costs, injunctive relief, and such other and further relief as the Court deems proper. (*See* Complaint Prayer for Relief.)

## II.

## REMOVAL UNDER CAFA IS APPROPRIATE

4.     This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332(d), and removal is proper under 28 U.S.C. §§ 1441 and 1446 because it is a civil action that satisfies the requirements stated in the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d) & 1453). CAFA extends federal jurisdiction over class actions where (1) any member of a class of plaintiffs is a citizen of a State different from any defendant, (2) the putative class consists of more than 100 members, and (3) the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d). This includes any class action filed under Federal Rule of Civil Procedure 23 or "similar State statute or rule of judicial procedure," such as California Code of Civil Procedure § 382. 28 U.S.C. § 1332(d)(1)(B); (*see also* Compl. ¶¶ 1, 14). As set forth below, each of these CAFA requirements are readily satisfied.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5. Because CAFA was enacted to facilitate federal courts' adjudication of certain class actions, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Jordan v. Nationstar Morg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (reversing remand order "[i]n light of the Supreme Court's clear statement in *Dart Cherokee* that Congress intended for no antiremoval presumption to attend CAFA cases").

**A.     Minimal Diversity Is Satisfied.**

6. While diversity removal normally requires complete diversity between plaintiffs and defendants, removal of a class action under CAFA only requires "minimal diversity", i.e., that at least one member of a class of plaintiffs be diverse from one defendant. *See* 28 U.S.C. § 1332(d)(2)(A). This requirement is readily satisfied here.

7. <u>Plaintiff's Citizenship</u>. Plaintiff is a citizen of California, which is where she resides and she alleges she has worked for Defendants at all relevant times. (*See* Compl. ¶¶ 5, 19; Decl. of Melissa Jacobs ("Jacobs Decl.") ¶ 13.) For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is prima facie evidence of domicile. *See District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941); *State Farm Mutual Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). Accordingly, because Plaintiff resides in California, Plaintiff is a citizen of California.

8. Moreover, the vast majority of the other putative class members are citizens of California, who have worked for the alleged Defendant BMA of California within California, and are currently domiciled in California.[2] (*See* Compl. ¶¶ 15 (defining proposed classes to include "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of

[2] BMA of California is, and was during the relevant time period, the only employing entity of Plaintiff and the putative class members. As a holding company, FMCPH does not employ any of the putative class members.

DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

California . . . ."); Jacobs Decl. ¶ 14 (vast majority of putative class members currently have California home addresses).)

9.    Defendant Bio-Medical Applications of California, Inc.'s Citizenship. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  A corporation's "principal place of business", or its so-called "nerve center", is "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (rejecting all prior tests in favor of the "nerve center" test).  "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters." *Id*.

10.    Here, BMA of California is a Delaware corporation that maintains its principal place of business in Waltham, Massachusetts. (Jacobs Decl. ¶ 5.)  Pursuant to the *Hertz* nerve center test, BMA of California's nerve center is in Massachusetts because its headquarters are located in Massachusetts, it maintains its administrative offices, corporate records, and files in Massachusetts, and most of its corporate officers reside in Massachusetts. (*Id.*)  The overall day-to-day operational, financial, and accounting decisions required for BMA of California's business are the responsibility of personnel located in Massachusetts. (*Id.*)  Accordingly, for purposes of diversity, BMA of California is a citizen of Delaware and Massachusetts—not California.

11.    Defendant Fresenius Medical Care Practice Holdings, Inc.'s Citizenship.  FMCPH is also a Delaware corporation that maintains its principal place of business in Waltham, Massachusetts. (Jacobs Decl. ¶ 6.)  Pursuant to the *Hertz* nerve center test, FMCPH's nerve center is in Massachusetts because its headquarters are located in Massachusetts, it maintains its administrative offices, corporate records, and files in Massachusetts, and most of its corporate officers reside in Massachusetts. (*Id.*)  The overall day-to-day operational, financial, and accounting

DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

decisions required for FMCPH's business are the responsibility of personnel located in Massachusetts. (*Id.*)  Accordingly, for purposes of diversity, FMCPH is a citizen of Delaware and Massachusetts—not California.

12.   Doe Defendants.   Although Plaintiff has also named fictitious defendants "DOES 1 through 100," the presence of Doe defendants has no bearing on diversity with respect to removal.  *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants need not join in the removal petition).  Thus, the existence of Doe defendants 1 through 100 does not deprive this Court of jurisdiction.

13.   Minimal Diversity.  Minimal diversity of citizenship exists under CAFA because Plaintiff (who is a member of the putative class) is a citizen of California, and Defendants are both citizens of Delaware and Massachusetts.  Therefore, at least one plaintiff is a citizen of a different state than at least one defendant, satisfying CAFA's minimal diversity requirement.  *See* 28 U.S.C. § 1332(d)(2)(A).

**B.   The Putative Class Exceeds 100 Members.**

14.   Plaintiff purports to bring this action on behalf of himself and "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California . . . during the period from four years preceding the filing of th[e] Complaint to final judgment" who suffered the alleged California Labor Code violations. (*See* Compl. ¶ 15.)

15.   From November 21, 2021 through the present, Defendant BMA of California employed approximately 4,205 hourly-paid or non-exempt employees in California.  (Jacobs Decl. ¶ 12(a).)

16.   Therefore, the putative class Plaintiff purports to represent consists of at least 100 members.

Baker & Hostetler llp
Attorneys at Law
Los Angeles

DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

## C.    The Amount In Controversy Exceeds $5 Million.

17.    CAFA further requires that, for the district court to exercise jurisdiction, the matter in controversy must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  When determining the amount in controversy, "the claims of the individual class members shall be aggregated."  28 U.S.C. § 1332(d)(6).  The U.S. Supreme Court has held that, as specified in 28 U.S.C. § 1446(a), a defendant's notice of removal need include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"; the notice need not contain evidentiary submissions.  *Dart Cherokee*, 135 S. Ct. at 553; *see also Al-Najjar v. Kindred Healthcare Operating, Inc.*, No. CV 17-6166 PSG (FFMx), 2017 WL 4862067, at *2 (C.D. Cal. Oct. 26, 2017) ) ("[T]he Supreme Court clarified that 'a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' . . . .").

18.    Following *Dart Cherokee*, district courts in California have held that where a removing defendant relies on assumed rates of wage-and-hour violations, the assumed rates are reasonable if they are "sufficiently supported" by the plaintiff's *own allegations* as well as the evidence submitted by the defendant.  *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-cv-09809-SVW-PJW, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015); *see also Oda v. Gucci Am., Inc.*, Nos. 2:14–cv–7468–SVW (JPRx), 2:14–cv–07469–SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) ("[A] defendant may calculate the amount in controversy based on reasonable assumptions."); *Lucas v. Michael Kors (USA), Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 2146403, at *3 (C.D. Cal. May 9, 2018) (same). And the Ninth Circuit has affirmed the propriety of this approach.  *See, e.g.*, *Perez v. Rose Hills Co.*, 131 F.4th 804 (9th Cir. 2025)

19.    This action involves Plaintiff's alleged claims against Defendants for their purported failure to: pay minimum and overtime wages, provide meal periods and pay meal period premiums, provide rest periods and pay rest period premiums,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

provide accurate wage statements, reimburse business expenses, pay all wages due during and at the time of separation from employment, as well as unfair competition. Plaintiff, on behalf of the putative classes, asserts that she and the classes are entitled to, among other things, an award of compensatory damages, liquidated damages, penalties, restitution to the class, prejudgment interest on all damages awarded, attorneys' fees and costs, and such other and further relief as the Court deems proper. (*See* Compl. Prayer for Relief.)

20.     Defendants deny Plaintiff's claims entirely.   But for purposes of removal only, and without conceding that Plaintiff or the putative class members are entitled to or could recover damages in any amount, the Complaint's allegations, theories, and Prayer for Relief place in controversy an aggregate amount in excess of $5 million, exclusive of interest and costs.

a.     Here, BMA of California's hourly non-exempt employees in the putative class were regularly scheduled to work at least 8-hour shifts, three to five days a week.  (*See* Jacobs Decl. ¶ 11.)  These hourly non-exempt employees in the putative class earned an average of approximately $36.24 per hour and worked an average of 133 weeks per employee since November 21, 2021.  (*Id.* at ¶¶ 12(b)-12(c).)

b.     First Cause of Action (Unpaid Overtime).  The Complaint alleges that Defendants "engaged in a ***pattern and practice*** of wage abuse against their hourly-paid or non-exempt employees within the State of California.  This ***pattern and practice involved*** . . . failing to pay them for all regular and/or ***overtime wages earned*** . . . ." (Compl. ¶ 27 (emph. added).)  Plaintiff further alleges that "Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other class members." (*Id.* at ¶ 57.)  Plaintiff contends that "Defendants failure to pay Plaintiff and the other class members the unpaid balance of overtime compensation . . . violates the provisions of California Labor Code [§§] 510 and 1198.  (*Id.* at ¶ 58.)

c.   "Courts in this Circuit have often found a 20% violation rate (one unpaid overtime hour per week) a reasonable and 'conservative estimate' when plaintiff alleges a 'policy and practice' of failing to pay overtime wages." *Sanchez v. Abbott Lab'ys*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) (finding one hour of unpaid overtime per week reasonable based on "pattern and practice" allegations); *Venet v. Recreational Equipment, Inc.*, No. 2:25-cv-03772-MWC-PD, 2025 WL 2048212, at *4 (C.D. Cal. July 22, 2025) (citing *Sanchez*, 2021 2679057, at *5 for proposition that courts in the Ninth Circuit have often found a 20% violation rate reasonable and conservative).

d.   Based on the Complaint's broad "pattern and practice" allegations, assuming one hour of missed overtime per week is reasonable.  Here, taking the even more conservative assumption of only one hour of missed overtime every four weeks (a 5% violation rate), and assuming 40 actual workweeks in a 52-week year (to account for vacations, holidays, and days off),[3] the total of unpaid overtime in controversy is approximately **$5,846,470** for the overtime claim (4,205 putative class members x 133 workweeks x 40/52 x .25 [5 percent violation rate] x $54.36 overtime rate [or 1.5 x $36.24 average hourly rate]).

e.   <u>Second Cause of Action (Unpaid Meal Period Premiums)</u>.  The Complaint alleges that Plaintiff and the putative class, "who were scheduled to work no longer than six (6) hours, and who did not waive their legally mandated meal periods by mutual consent, were required to work for more than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes."  (Compl. ¶ 65.)  Plaintiff also alleges that she and other class members, "who were scheduled to work in excess of six (6) hours, were required to work more than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes."  (*Id.* at ¶ 66.)  Plaintiff further alleges that Defendants engaged in a "***pattern and practice*** [that] involved . . . failing to pay them for all . . . missed meal periods . . . in violation

---

[3] *See Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (40 workweeks a year is a reasonable assumption).

8

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

of California law." (*Id.* at ¶ 27 (emph. added).) Plaintiff alleges that she "and the other claims were entitled to receive all meal periods or payments of one additional hour of pay at . . . [their] regular rate of pay when a meal period was missed." (*Id.* at ¶ 30.) Plaintiff further alleges that she and the putative class members "did not receive all meal periods or payment of one additional hour of pay at . . . [the] regular rate of pay . . . ." (*Id.*)

               f.      Numerous courts in the Ninth Circuit "have found violation rates as high as 60% to be reasonable to calculate the amount in controversy when allegations represent a 'pattern and practice' or 'policy and practice' of" meal period violations. *Zamora v. Penske Truck Leasing Co.*, L.P., No. 2:20-cv-02503-ODW (MRWx), 2020 WL 4748460, at *4 (C.D. Cal. Aug. 17, 2020); *see also Bryant v. NCR Corporation*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (finding a 60% violation rate was a reasonable and "conservative[]" assumption for missed meal periods based on "policy and practice" allegations); *Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JC), 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) (finding 50% violation rate for noncompliant meal periods reasonable based on "pattern and practice" allegations); *Oda,* 2015 WL 93335, at *5 (finding a 50% violation rate for noncompliant meal periods reasonable based on "policy or practice" allegations); *Olson v. Beckton, Dickinson and Company*, No. 19cv865-MMA (BGS), 2019 WL 4673329, at *5 (S.D. Cal. Sept. 25, 2019) (finding 25% violation rate for noncompliant meal periods reasonable based on "pattern and practice" allegations); *Torrez v. Freedom Mortgage, Corp.*, No. EDCV 17-867 JGB (KKx), 2017 WL 2713400, at *3-4 (C.D. Cal. June 22, 2017) (finding 40% violation rate for noncompliant meal periods reasonable based on "pattern and practice" allegations); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (finding "a violation rate of 40%—a median between 25% and 60%—to be reasonable" based on "pattern and practice" allegations).

g. Although Defendants deny any and all liability, conservatively assuming a 5% violation rate (or one missed meal period every four weeks)—which is a reasonable assumption based on Plaintiff's allegations that Defendants engaged in a "***pattern and practice***" of failing to provide compliant meal periods and pay meal period premiums (Compl. ¶¶ 27-30, 65-66 (emph. added))—and again assuming the putative class suffered violations during 40 actual workweeks in a 52-week year, then the amount in controversy for this claim alone equals **$3,897,647** (4,205 putative class members × 130 workweeks × 40/52 × .25 [5 percent violation rate] × 1 hour of premium pay × $36.24 average hourly rate).

h. <u>Third Cause of Action (Unpaid Rest Period Premiums)</u>. The Complaint alleges that "Defendants required Plaintiff and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute net rest period per each four (4) hour period worked." (Compl. ¶ 75.) The Complaint further contends that "Defendants willfully required Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods." (*Id.* at ¶ 76.) According to Plaintiff, Defendants engaged in a "***pattern and practice*** [that] involved . . . failing to pay them for all . . . missed . . . rest periods in violation of California law." (*Id.* at ¶ 27 (emph. added).) Plaintiff further alleges that "Defendants required Plaintiff and the other class members to remain on Defendants' premises during purported rest periods, thereby failing to relieve them of all employer control." (*Id.* at ¶ 32.)

i. "Courts in the Ninth Circuit have found a 10% to 30% violation rate to be reasonable when the plaintiff claims a 'pattern and practice' of rest period violations." *Sanchez*, 2021 WL 2679057, at *5; *see also Bryant*, 284 F. Supp. 3d at 1151 (finding a 30% violation rate was a reasonable and "conservative[]" assumption for missed rest breaks based on "policy and practice" allegations); *Elizarraz*, 2019 WL 1553664, at *3-4 (finding 25% violation rate for missed rest breaks reasonable

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

based on "pattern and practice" allegations); *Oda,* 2015 WL 93335, at *5 (finding a 50% violation rate for missed rest breaks reasonable based on "policy or practice" allegations); *Olson*, 2019 WL 4673329, at *5 (finding 25% violation rate for missed rest breaks reasonable based on "pattern and practice" allegations); *Torrez*, 2017 WL 2713400, at *3-4 (C.D. Cal. June 22, 2017) (finding 20% violation rate for missed rest breaks reasonable based on "pattern and practice" allegations).

j. Although Defendants deny any and all liability, conservatively assuming a 5% violation rate—which is a reasonable assumption based on Plaintiff's allegations that Defendants engaged in a "***pattern and practice*** . . . [of] failing to pay [Plaintiff and the other class members] . . . for missed . . . rest breaks." (Compl. ¶ 28 (emph. added))—and assuming the putative class suffered violations during 40 actual workweeks in a 52-week year, then the amount in controversy for this claim alone equals **$3,897,647** (4,205 putative class members × 130 workweeks × 40/52 × .25 [5 percent violation rate] × 1 hour of premium pay × $36.24 average hourly rate).

k. <u>Conservative Total Amount in Controversy</u>. Based on the claims and reasonable assumptions described above, the class-wide amount in controversy is conservatively estimated to be at least **$13,641,764**, well exceeding the $5 million CAFA threshold.

| Claim | Amount in Controversy |
|---|---|
| Unpaid Overtime | $5,846,470 |
| Unpaid Meal Period Premiums | $3,897,647 |
| Unpaid Rest Period Premiums | $3,897,647 |
| **TOTAL** | **$13,641,764** |

21. The foregoing calculations, which present "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," *Dart Cherokee*, 135

DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

S. Ct. at 553, do not even include Plaintiff's claimed attorneys' fees[4] or class-wide claims alleging a "policy and practice" of unpaid minimum wages, noncompliant wage statements, waiting time penalties, or failure to reimburse business expenses, amounts that, if included, would bring the amount in controversy in even greater excess of $5 million.

### III.

### COMPLIANCE WITH REMOVAL STATUTE AND LOCAL RULES

22. The Notice of Removal was filed in the proper venue because the United States District Court for the Central District of California embraces the Superior Court of the State of California for the County of Los Angeles, which is the State court where Plaintiff brought this action and where it is pending. 28 U.S.C. §§ 1441(a) & 1446(a); (*see generally* Compl.).

23. The Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. 28 U.S.C. § 1446(a).

24. The Notice of Removal is timely because it was filed within thirty days after receipt by Defendants, through service or otherwise, of a copy of the Complaint from which it was first named a defendant and first ascertained that the action is one which has become removable. 28 U.S.C. § 1446(b)(3).

25. The Notice of Removal properly disregards Doe defendants. Although Plaintiff has named fictitious defendants "DOES 1 to 100," their consent to federal jurisdiction is not required to effect removal. *See* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 . . . except that such action may be removed by any defendant without the consent of all defendants."); *see also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).

---

[4] "[W]hen a statute . . . provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). Plaintiff seeks attorneys' fees for each and every cause of action. (Compl. Prayer for Relief.)

26. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all additional process, pleadings, and orders served upon Defendants in this action are attached hereto as **Exhibit 4**.

27. Defendants are not filing a Disclosure Statement pursuant to Federal Rule of Civil Procedure 7.1 because it is filing a Notice of Interested Parties pursuant to L.R. 7.1-1 concurrently with this Notice of Removal.

28. As required by 28 U.S.C. § 1446(d), Defendants are providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California for the County of Los Angeles.

**IV.**

**CONCLUSION**

29. For the reasons stated above, Defendants respectfully request that this Court exercise jurisdiction over this action and enter orders and grant relief as may be necessary to secure removal and to prevent further proceedings in this matter in the Superior Court of the State of California for the County of Los Angeles. Defendants further request such other relief as the Court deems appropriate.

Dated: January 15, 2026          **BAKER & HOSTETLER LLP**


By:   */s/ Alex E. Spjute*
      David H. Stern
      Alex E. Spjute
      Jennifer D. Ghassemi
      Matthew J. Goodman

*Attorneys for Defendants,*
BIO-MEDICAL APPLICATIONS OF CALIFORNIA, INC. (wrongly named twice as USA Bio-Med Appl of California, Inc.) AND FRESENIUS MEDICAL CARE PRACTICE HOLDINGS, INC.

13